# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RAMON RAMIREZ,

    Plaintiff,

vs.                                                                                 Civil No. 98-103 JC/WWD

KENNETH S. APFEL,
Commissioner, Social Security Administration,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed November 2, 1998 [8-1]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance and Supplemental Security Income benefits. Plaintiff is fifty-four years old and alleges a disability which commenced February 22, 1995 and June 16, 1995 (respectively), due to pain in his back and neck, and a birth defect involving his left leg and foot. Plaintiff attended school through the twelfth grade, but did not graduate from high school. Mr. Ramirez' past relevant work was as a hospital maintenance worker.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Mr. Ramirez was not disabled during any of the relevant times. The ALJ determined that although Mr. Ramirez could no longer perform

work in the medium to heavy category, he nevertheless has a residual functional capacity for at least light work, which was not significantly altered by any nonexertional factors. Tr. at 12.[1] The Appeals Council upheld the ALJ's final decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) that the ALJ erred in finding that Plaintiff's impairments have not met or equal a listed impairment; (2) that the ALJ erred in finding that Plaintiff's testimony of subjective complaints (including pain and depression) was not supported by the evidence as a whole; and (3) that the ALJ erred in concluding that Plaintiff's non-exertional factors have not significantly altered his work capacity for light work..

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42

---

[1] Light work requires standing or walking for six hours out of an eight hour workday, lifting no more than twenty pounds at a time, and frequent carrying of objects weighing up to ten pounds at a time. See 20 C.F.R. 1§ 404.1567(b), § 417/078(b).

U.S.C. §§ 423 (d)(1)(A));1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work. Thompson at 1487 (citations omitted). The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

8. Mr. Ramirez' neck and back pain originated from a work-related fall he had on February 22, 1993. Tr. at 185. He states that he has this pain daily, which radiates from his neck

3

to his left arm and then to several fingers of his left hand. His fingers sometimes lose feeling and become numb, causing him to drop things. Tr. at 112, 192. He has taken various medications for this pain, including Ativan and Lorcet. Tr. at 121.

9. Plaintiff also had a heart attack in October 1994. He was found to have a "very small amount" of arteriosclerotic heart disease" in August 1983 for which he was prescribed Corgard, Toprol (anti-hypertensive medication) and Mevacor (a cholesterol-lowering agent). for some time, and told to stop smoking. Tr. at 137, 174. By October 1994, a cardiac catheterization revealed "no significant" heart disease. At the time, Dr. Dye recommended that Mr. Ramirez stop drinking three beers a day, as that might interfere with the Mevacor. Id. Plaintiff stated at the hearing that his problems with his heart and cholesterol have been "pretty well-controlled," although he carries nitroglycerin tablets which he does not need to use often. Tr. at 186-87.

10. Plaintiff was born with a club foot, causing his left foot to be shorter than his right, which one doctor saw as contributing to his chronic back pain, Tr. at 13-14, 122, but which did not affect his ability to work until his work-related fall. See Tr. at 19. He has received veteran's benefits on the basis of this congenital deformity. Tr. at 19.

11. Mr. Ramirez' other nonexertional impairment in addition to chronic back pain is depression, which he told his VA doctor he had all his life, although he told the ALJ at the hearing that it dates back to his work injury and his brother's death. Tr. at 168, 193, 207. He has been taking nortriptyline at different times, but stated that it does not help his insomnia. Id. Plaintiff attributes his withdrawal from social activities and bad concentration to his alleged inability to work. Tr. at 195, 197. He also told the ALJ that he drinks (increasing to at least a six-pack a day) and smokes (about two packs) "to relax and forget about everything."

4

12. Mr. Ramirez has been told by several doctors that he should stop drinking and smoking because they don't help his heart condition and they also exacerbate his chronic pain. Tr. at 108-09, 137, 121-22, 156-57. In fact, in June 1996, a social worker from the Veterans Administration ("VA") recommended that the nortriptyline for depression be discontinued until Plaintiff could become sober, as his depression could not be assessed and his other medications could not be changed until he did so. Tr. at 160-61. He admitted that he continues to smoke and drink.

13. Plaintiff spends his day sitting and watching TV. Tr. at 205. He states that he cannot sit or stand for longer than a half hour to an hour, and can only walk about a block before his back and legs hurt. Tr. at 188. He can lift a two-gallon jug of milk, although he was not sure he could lift it several times before tiring. Tr. at 191. He has a driver's license but is not able to drive because of two DWI's.

14. As an initial matter, I find that Plaintiff has not waived the alleged grounds for error. Although the grounds stated in the Request for Review of Hearing do not contain citations and authority, I nevertheless find that they were adequate to apprise the Appeals Council of the specific points of error counsel argues in his memorandum brief. See James v. Chater, 96 F.3d 1341 (10th Cir. 1996).

**First Alleged Error**

15. Plaintiff first alleges that the ALJ erred in finding that Plaintiff's impairments have not met or equal a listed impairment. Specifically, Plaintiff contends that two mental impairments, Organic Mental Disorder (Pt.404,Subpt.P.App.1, § 12.02) and Affective Disorder (§ 12.04) equal a listed impairment. He also contends that although the physical impairments by themselves do

not equal a listed impairment, they do when combined with the mental impairments.[2]

16. The ALJ completed a Psychiatric Review Technique Form which contains his findings regarding a mental impairment under either §12.02 or §12.04. In both cases, Plaintiff's impairment did not qualify as a listed impairment at least under Part B, which requires at least two "marked" functional limitations in the various categories.

17. Plaintiff's reports of depression were either self-reported or reports from a VA social worker.[3] The record contains no medical evidence, required even for mental impairments, to support a severe depression which would equal a listed impairment under either §12.02 or §12.04. See 20 C.F.R. §§ 404.1508, 416.908 (a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by statement of symptoms).

18. The ALJ also did not err in finding that, based on the record as a whole, neither pain nor depression "significantly compromise [Plaintiff's] ability to perform a full range of light work." Tr. at 18,19; Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (ALJ may rely upon the grids when no significant nonexertional impairment exists); Williams v. Bowen, 844 F.2d 748 (10th Cir. 1988) (grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit ability to perform the full range of work in a particular work category).

---

[2] Plaintiff suggests that an additional impairment, substance addiction, is not supported by objective medical evidence. Mem.Brf. at 8.

[3] His daughter also testified at the hearing, where she stated that Plaintiff "feels like he's worthless" because he does not work. Tr. at 206. The ALJ was not required to consider this as medical evidence of depression.

19. The ALJ was also entitled to consider that, despite the repeated recommendations to stop drinking and smoking, Plaintiff never attempted to enter or participate in an alcohol treatment program, or stopped smoking. Tr. at 205, and Tr. at 137, 121-22, 156, 160-61. The failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996); § 404.1530(a).

20. At the hearing, Plaintiff's counsel made much of the fact that no doctor ever told Plaintiff that if he stopped smoking or drinking, that his back condition or depression would improve, or that he would be able to return to work. Tr. at 202,214. The argument is pointless, because two of Plaintiff's treating physicians *did* release him to return to light duty work. Tr. at 18, 108, 116; see Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995) (finding it significant that plaintiff's doctors encouraged him to return to work). However, because Plaintiff's drinking and smoking were found to exacerbate the symptoms related to his non-exertional impairments (pain and depression), taking his doctors' advice would have a positive impact on the very factors which Plaintiff alleges keep him from working.

21. Given the above medical findings and reports, the ALJ did not err in concluding that Plaintiff's impairments did not meet or equal a listed impairment. There also is insufficient evidence from the record that Plaintiff's combination of impairments equals a listed impairment. His heart condition had stabilized and was well under control by October 1994, according to Dr. Dye. Tr. at 137. Despite findings of degenerative disc disease at L5-S1 and a bulge at L3-4 and L4-5, Dr. Stern opined that Plaintiff could still continue working, although restricted from the heavier work activities he had performed in the past. Tr. at 108-09. The ALJ's reliance on this medical information was not error. Tr. at 14-15, 17. See Campbell v. Bowen, 822 F.2d 1518,

7

1521 (10th Cir. 1987) (ALJ's consideration of testimony in combination with discussion of various impairments is sufficient to demonstrate he considered combined effect).

**Second Alleged Error**

22. Plaintiff also contends that the ALJ erred in finding that Plaintiff's testimony of subjective complaints (including pain and depression) was not supported by the evidence as a whole. However, I find that the ALJ applied the proper legal standard and came to his conclusion of noncredibility based on substantial evidence from the record.

23. As fact-finder, the ALJ could examine various factors to come to a credibility determination: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, "subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993).

24. Dr. Stern found it odd that Plaintiff complained of severe pain, but failed to bring along his pain medication on a long trip. He opined that Plaintiff's symptoms could be controlled using medication and a corset and released him back to work.

25. The ALJ may take into account a claimant's motivation or lack of it when assessing credibility. Tr. at 107-09; see Diaz v. Sec'y of Health & Hum. Serv., 898 F.2d.774, 777 (10th Cir.1990). He noted that, according to Dr. Stern, Plaintiff had expressed a candid desire to stop work and get disability benefits. Tr. at 107-09. Although Plaintiff reported obtaining symptomatic relief with physical therapy, he failed to complete this treatment. Tr. at 14, 105. He

8

also failed to follow recommendations which he was told would have helped his symptoms.

26. Dr. Barta's September 1995 examination of Plaintiff also supports the ALJ's conclusion that Mr. Ramirez could still perform a certain level of work. Dr. Barta opined that Plaintiff's chronic pain resulted in part from his congenital foot deformity and was exacerbated by his habits of drinking and smoking. Tr. at 121-22.

27. In his April 1995 examination of Plaintiff, Dr. Seelinger noted that Plaintiff had "ongoing pain" which limited and interfered with Plaintiff's ability to carry out work, specifically regarding his ability to do "work above his head and normal maintenance activities." This medical finding by itself does not necessarily preclude a step five finding that Plaintiff could perform work at a level other than his past relevant work, which is the ALJ's task, and which the ALJ in this case ultimately decided. See Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 810 (10th Cir. 1991) (ALJ has ability to resolve conflicts in the medical evidence). Nor does this medical finding lead to a determination of disability. See 20 C.F.R. § 404.1527(e)(1) (Commissioner is responsible for examining medical source opinions and making the determination on whether claimant meets statutory definition of disability).

28. The ALJ may discount unsupported subjective complaints. Diaz v. Sec'y of HHS, 898 F.2d 774, 777 (10th Cir. 1990). Given the above medical evidence, the ALJ was not in error to find that Plaintiff's complaints of disabling pain were inconsistent with the medical record, notwithstanding that Plaintiff does experience some chronic pain. A finding of disability requires more than mere inability to work without pain. It must be severe enough to preclude any substantial gainful employment. Brown v. Bowen, 801 F.2d 361, 362 (10th Cir. 1986). For the above reasons, the record in this case supports the ALJ's finding that Plaintiff's testimony

regarding disabling pain was not credible.

**Third Alleged Error**

29. Last, Plaintiff alleges that the ALJ erred in concluding that Plaintiff's non-exertional factors have not significantly altered his work capacity for light work. Based on the medical evidence I have discussed above, including Plaintiff's treating physician's reports and opinions, this ground has no merit. Plaintiff concedes that he has a residual functional capacity for light work, Mem.Brf at 3, but argues that his non-exertional impairments (i.e., symptoms of pain and depression) prevent him from doing a full range of even sedentary work, thereby rendering him disabled. However, because the ALJ determined that Plaintiff's subjective complaints were not supported by the evidence, he could then rely on the grids to conclude that Mr. Ramirez is not disabled. See Williams v. Bowen, 844 F.2d 748, 755 (10th Cir. 1988) (ALJ may rely on the grids when evaluating non-exertional impairment if plaintiff's testimony is not entirely credible).

30. In sum, I find that: (1) the ALJ did not err in finding that Plaintiff's impairments have not met or equal a listed impairment; (2) the ALJ did not err in finding that Plaintiff's testimony of subjective complaints (including pain and depression) was not supported by the evidence as a whole; and (3) the ALJ did not err in concluding that Plaintiff's non-exertional factors have not significantly altered his work capacity for light work.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing [8-1] be denied and this cause of action dismissed with prejudice. Timely objections to the foregoing may

be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE